UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIRESTONE ART LLC, d/b/a Eric Firestone,

      *Plaintiff,*

  - against -

TOKIO MARINE HIGHLAND INSURANCE
SERVICES, INC. d/b/a Tokio Marine
Highland, Fine Art Division;
PHILADELPHIA INDEMNITY
INSURANCE COMPANY a Tokio Marine
Company, and DOES 1-10,

     *Defendants.*

No. 1:24-cv-03772

## MEMORANDUM OF LAW OF DEFENDANTS
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TRO

Dated:  New York, New York
       2024-May-20

ARTxLAW PLLC

    John R. Cahill
    Ronald W. Adelman
    8 North Front Street
    Kingston, NY 12401
    john@artxlaw.com
    ron@artxlaw.com
    Tel. 212-719-4400

    *Attorneys for Defendants*

Defendants Tokio Marine Highland Insurance Services, Inc., and Philadelphia Indemnity Insurance Company (together "Defendants" or the "Insurer") respectfully submit this memorandum of law in opposition to the motion of Plaintiff Firestone Art LLC ("Plaintiff" or the "Gallery") for a temporary restraining order and a preliminary injunction preventing the Insurer from moving the damaged "Artworks" to The Conservation Center ("TCC") in Chicago, Illinois for treatment, including restoration.

## BRIEF SUMMARY OF MATERIAL FACTS

The facts relevant to this motion are set forth in the moving affirmation of the Gallery's counsel (Dkt 3-2) (the "Moving Aff.") and the Declaration of John Cahill on Behalf of the Insurer dated 2024-May-20 (the "Opp. Decl.").

This case arises out of garden-variety insurance claim arising out of damage to the Artworks resulting from a burst pipe that affected the Gallery's New York premises. The Insurer and the Gallery have attempted to reach an informal settlement of the insurance claim but failed to do so. After the Insurer began to process the Gallery's claims pursuant to the term of the applicable insurance policy (Opp. Decl. **Exhibit 2, the** "Policy") by arranging for the more than 250 Artworks to be treated by TCC, a highly regarded conservation firm that routinely handles the treatment of large damages of Artworks, the Gallery moved this Court for an "emergency" TRO.

## BRIEF SUMMARY OF ARGUMENT

The Gallery's motion finds no support in existing law and, the *ipse dixit* of its counsel offered in support of the motion has neither evidentiary support nor a predicate in reason.

Nothing in the governing agreement, the Policy, allows the Gallery to instruct the Insurer to send the Artworks to conservators in New York. Nothing submitted by the Gallery supports its claim that it is "completely unreasonable" for the Artworks to be conserved in Chicago because of the "unnecessary risk" of a "1600-mile journey" between New York and Chicago. (Opp. Decl. ¶ 10, citing to the Gallery's counsel's email, **Exhibit 3** thereto at 8.)

To the contrary, both the evidence (including the 2024-May-20 Declaration of TCC's CEO, Heather Becker, and the detailed exhibits attached thereto) and sound reasoning make clear that treatment of the Artworks by TCC in Chicago benefits both the Gallery (including its owner-consignors whose Artworks were damaged) and the Insurer, which has an economic incentive to have the conservation done effectively to minimize any loss in value.

Practically speaking, rather than multiple conservators in New York who have less space, fewer resources (including a large, well-qualified staff, and its own art-transport specialized trucks), and no evident ability to store and handle the large number of Artworks that are the subject of the Gallery's claim, TCC appears to be the

best option and, in any event, is not "unreasonable" or one the creates "unnecessary risk."

Plaintiff fails to satisfy any of the requirements for obtaining the extraordinary relief of a temporary restraining order: (1) a showing of irreparable harm, (2) a likelihood of success on the merits, (3) a balance of the equities, and (4) public interest tipping in its favor.

For reasons set forth below, Plaintiff's request for a TRO should be denied.

## ARGUMENT

### I.  Applicable Standard

Federal Rule of Civil Procedure 65(b)(1)(A) provides a court "may issue a temporary restraining order…*only if*: specific facts in an affidavit or verified complaint clearly show that *immediate and irreparable* injury, loss or damage will result to the movant before the adverse party can be heard in opposition" (emphasis added).

In considering whether a temporary restraining order is appropriate, courts "must examine whether the movant[  ] has[  ] demonstrated a threat of irreparable harm that will occur *immediately* to justify a temporary restraining order." *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367 (E.D.N.Y. 2020).

Apart from immediate relief, "the standard for granting a temporary restraining order and preliminary injunction is the same." *Carter v. Sewell*, No. 23 Civ. 1139 (JLR),

2023 WL 7164304, at *1 (S.D.N.Y. Oct. 31, 2023) (citing *Jackson v. Johnson*, 962 F. Supp. 391,

392 (S.D.N.Y. 1997)).

To obtain a preliminary injunction a movant must establish that: (1) it is likely to

suffer irreparable harm if the injunction is not granted; (2) it is likely to succeed on the

merits; (3) the balance of equities tips in its favor, and (4) the injunction serves the public

interest. *Carter*, 2023 WL 7164304 at *1 (citation omitted).

Plaintiff's motion does not satisfy any of the required elements for a TRO or a

preliminary injunction.

## II. Plaintiff Fails to Meet the Stringent Standard for a Temporary Restraining Order
### A. Plaintiff Has Not Demonstrated an Immediate Threat or Irreparable Harm

Plaintiff has failed to demonstrate it will immediately suffer any irreparable harm

if there is no temporary restraining order issued.

The Second Circuit has "deemed the threshold showing of 'irreparable harm' to

be of particular significance under Rule 65. *Spencer Trask Software & Info. Servs., LLC v.*

*RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 581 (S.D.N.Y. 2002). *See also Reuters Ltd. v. United*

*Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). In fact, it is considered the "most important

prerequisite for issuance of a preliminary injunction." *Id*. Not only must a moving party

show that the injury it will suffer is "likely and imminent, not remote or speculative," but

that "such injury is not capable of being fully remedied by money damages." *Id*.; *see also*

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

Plaintiff has requested the Court issue a temporary restraining order to prevent Defendants from transferring the artworks outside of the New York metropolitan area to "avoid irreparable harm," but fails to state exactly what the irreparable harm is it faces. Dkt. 3-2 ¶ 17.

In an attempt to support its "emergency" motion, Plaintiff contends that TCC's transporting the artworks to Chicago to be treated by its team of highly qualified conservators "greatly increases the risk of further damage to the artworks" but fails to identify or provide evidentiary support for the alleged irreparable harm it seeks to prevent. Dkt. 3-2 ¶ 3. There is not a scintilla of evidence in, or referenced by, the Gallery that there is "unnecessary risk" in transporting the Artworks to TCC in Chicago. (Opp. Decl. ¶ 10, citing to the Gallery's counsel's email, **Exhibit 3** thereto at 8.) Many artworks of much-greater value are shipped to and from Chicago—including, it appears, by the Gallery itself (Opp. Decl. ¶¶ 16-17)—as well as much further afield.

In addition, the already-damaged Artworks will be transported by well-trained TCC personnel in specialized trucks (TCC Decl. and Opp. Decl., *passim; see, e.g.,* TCC Decl., **Exhibit 1** at 3), the Artworks will remain insured by the Insurer during transit. (Opp. Decl. ¶ 15 and **Exhibit 2** thereto, Policy, Coverage § 3, provides insurance of Covered Property "worldwide").

Plaintiff has also failed to demonstrate the requisite urgency needed to meet the stringent standard of a temporary restraining order. If anything, by its current antics,

Plaintiff is delaying the claims process for itself and the owner-consignors whose Artworks appear to represent the majority of the claims. While the Gallery may not acknowledge that it has not provided the Insurer with sufficient information to process the claims, it admits that it has long delayed seeking a TRO or preliminary injunction to address its claims that undamaged artworks were to have been returned to the Gallery in January 2024 from the Insurer's "chosen Storage facility" (Moving Decl. ¶¶ 10-12; *see, also*, Dkt. 3-5, Plaintiff's Memorandum of Law in Support of TRO and Injunctive Relief ["Gallery Br."] at 4) and are at "risk of further damage" due to the Insurers having "mishandled" them.[1]

It is well-established that "months-long delays in seeking injunctions have repeatedly been held…to undercut the sense of urgency." *Carter*, 2023 WL 7164304 at *1 (internal quotation marks and alteration omitted). Because a temporary restraining order is a mechanism for emergency relief, Plaintiff's 'failure to act sooner…suggests that there is, in fact, no irreparable injury.' *Carter*, 2023 WL 7164304 at *1 (citing *Tough Traveler Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (citation omitted).

Further, although Plaintiff has failed to identify what, if any, immediate irreparable harm might occur, while unlikely, any potential harm to the artworks in transit to be treated can be remedied by monetary damages. *Equiom (Isle of Man) Ltd. v.*

---

[1] The artworks were stored at long-established fine art warehouse that has provided specialized art storage for more than 40 years. https://www.crozierfinearts.com/solutions/storage

*Smith Elec. Vehicles US Corp.*, No. at *1 (S.D.N.Y. Sept. 18, 2015) (A showing that monetary damages are inadequate to compensate a Plaintiff for its injury is necessary to warrant the "extraordinary remedy" of a permanent injunction). As noted above, the Artworks will remain insured against loss and damage worldwide, including en route to TCC in Chicago.

### B.  Plaintiff Cannot Demonstrate Likelihood of Success on the Merits

Because Plaintiff has failed to fulfill their obligations under the Policy, it cannot demonstrate a likelihood of success on the merits.

Defendants do not dispute the Policy constitutes a valid and enforceable agreement, or that the Insured (Plaintiff) has claims insured by the Insurer. Although the Insurer has reserved its rights due to what looks increasingly like the Gallery's unwillingness to cooperate as required by the Policy, including in providing information necessary to process the Gallery's claims (Opp. Decl. at p. 3 n.1) and, as a result of this motion, delaying the determination of the loss in value, which can only be determined *after* treatment of the Artworks. (Opp. Decl. ¶ 15.) and Defendants do not even dispute that the Insurer intends to fund or pay the covered costs and loss in value arising out of the Insured's loss as set forth in the Policy.

Under the Policy, Plaintiff has a duty to "[c]ooperate with [the Insurer] in the investigation and settlement of the claim."[2] Plaintiff has breached this duty by failing to provide everything needed that has been requested to effectuate the claim. Plaintiff also has failed to cooperate with the Insurer by filing a lawsuit instead of the Policy-required arbitration if there is a disagreement as to the loss in value, etc. of the damaged Artworks.[3]

Because Defendants have been compliant in diligently executing their obligations under the Policy, and because that execution has been frustrated by Plaintiff's failure to fulfill their obligations, Plaintiff fails to demonstrate it is likely to succeed on the merits of its breach of contract and declaratory judgment claims.

## C.  The Balance of the Equities Tips in Defendants' Favor

The Insurer has been in discussion with the Gallery for months in an attempt to enter into a settlement agreement that would address all of the claims of the Gallery and its owner-consignors.

Although it is unfortunate that no settlement was reached, preventing the efficient and effective treatment of the Artworks will harm all involved, including the owner-

---

[2] Opp. Decl., Exhibit 2, Policy, General Conditions § 10(j).
[3] Opp. Decl., Exhibit 2, Policy, General Conditions § 2: "In the event you and we disagree on the value of the Covered Property or the amount of 'loss' the claim will be resolved by an arbitration process beginning with a written demand by either party for an appraisal of the 'loss.'" Additionally General Conditions § 15 of the Policy provides: "No one may bring a legal action against us under this policy unless there has been *full compliance with all the terms and conditions* of this policy…."

consignors, the Insurer, and the Gallery itself.

As the Artworks will remain insured including during shipment, and be treated at TCC, a fully qualified conservator, no harm results from denying the TRO. Granting the TRO, on the other hand, would harm all parties, perhaps especially the owner-consignors whose works will be untreated, and claims will remain unadjusted. The Gallery will be harmed in the same way and neither it nor the Artworks will be harmed by having the Artworks conserved at TCC. Plaintiffs' claims that it would be "unduly burdened" by having to expend "great resources to monitor the progress of conservation" is a red herring as there is no requirement that the Gallery constantly monitor the work of trained professional conservators. (*See, e.g.*, TCC Decl. at p. 3 n.2.) which notes that all of its conservators are members of their leading professional organization (the "American Institute of Conservation") which expressly authorizes to consult and communicate with artists, consignor-owners, etc. if appropriate).

### D.  The Public Interest

Defendants do not believe the public interest is materially affected by the immediate action.

CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's request for a TRO.

Dated: 2024-May-20

**ARTxLAW** PLLC

By: /s/ *John R. Cahill*
John R. Cahill
Ronald W. Adelman
8 North Front Street
Kingston, NY 12401
john@artxlaw.com
ron@artxlaw.com
212-719-4400

*Attorneys for Defendants*