# EXHIBIT 2



# DEALER POLICY

Underwritten by Philadelphia Indemnity Insurance Company

a Tokio Marine Company





**Policy Number:**   PCFA-000033-01

# Declarations

These declarations and the common policy conditions, together with the form(s) and endorsements, if any, issued to form a part thereof, complete the above numbered policy.

**Named Insured:**  Firestone Art, LLC dba Eric Firestone

**Mailing Address:**     4 Newton Lane, East Hampton, NY 11937

**Additional Insured:**     1847 Dorset West Rd, LLC

**Company:**  Philadelphia Indemnity Insurance Company
a Tokio Marine Company
One Bala Plaza, Suite 100
Bala Cynwyd, PA 19004

**Producer:**  Genser Insurance Inc.
300 1st Avenue
Suite 203
Needham, MA 02494

**Type of Policy:**   Dealer
The Company providing coverage by this form is nonparticipating with regard to paying dividends to policyholders.

**Policy Term:**     04/15/2022   to   04/15/2023   at 12:01 A.M. Standard Time at the mailing address shown above.

**Valuation:**  Please refer to the policy wording for further details.

## Limits of Insurance

The maximum the Company will pay per occurrence of loss as defined in the policy wording is: $10,000,000

The policy is further subject to the below limits by class. The Class Limits stated are the maximum amount the company will pay as defined by the specific class wording attached.

| Limit | Class |
|---|---|
| $    10,000,000 | Dealer |

The Limit of Insurance is further subject to the below limitation(s). The limits stated are the maximum amount the company will pay as defined in the policy wording.

| Limit | Description |
|---|---|
| $    10,000,000 | At Named Locations |
| $      2,500,000 | Transit |
| $      2,500,000 | Unnamed Locations |
| $    10,000,000 | Earthquake |
| $    10,000,000 | Terrorism |

    Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

Policy Number:  PCFA-000033-01

**Named Locations**

The below listed locations are considered named under the coverage of this policy.

(A) 4 Newtown Lane, East Hampton, NY 11937

(B) 519 East Prince Road, Tucson, AZ 85705

(C) Pima Air & Space Museum, 6000 East Valencia Road, Tucson, AZ 85756

(D) 4 Great Jones Street, New York, NY 10012

(E) 62 Newtown Lane, East Hampton, NY 11937

(F) 40 Great Jones Street, New York, NY 10012

(G) 30 Old Orchard Street, East Hampton, NY 11937

(H) 1847 Dorset West Road, Dorset, VT 05251

**Deductibles**

In the event of a loss, the following deductibles apply as defined in the policy wording:

All Risk: $1,000

**Forms and Endorsements Made Part of this Policy**

TM-CFA-DEC (08/20) Declarations

TM-CFA-004 (08/20) FINE ART DEALER POLICY

TM-CFA-008 (08/20) Earthquake Coverage

TM-CFA-035 (08/20) U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

TM-CFA-040 (08/20) Additional Insured

TM-CFA-043 (08/20) Cyber Exclusion (Targeted Cyber Attack Write-Back)

TM-CFA-044 (08/20) Communicable Disease Exclusion

PP 20 20 (02/20) PRIVACY NOTICE FOR COMMERCIAL LINES

TM-CFA-NY (08/20) NEW YORK AMENDATORY ENDORSEMENT

**Premium and Surcharges**

**Payment Plan:**   Annual

The total cost of the above numbered policy is as stated below.

| | | | |
|---|---|---|---|
| **Total Policy Premium:** | | $ | 23,250.00 |
| **State Surcharge (if applicable):** | 0.00% | $ | - |
| **Total Cost of Policy:** | | $ | 23,250.00 |

*In return for the payment of the premium stated, and subject to all terms and conditions thereof, we agree to provide you with insurance as stated in this policy.*

*Authorized Representative*

04/11/2022
DATE

**In the event of any questions, or a claim, you should contact your producer or:**

Claimsreporting@preciseadjustments.com
800-627-7601

Policy Number:  PCFA-000033-01



## FINE ART DEALER POLICY

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

Throughout this policy "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Various provisions in this policy restrict coverage. Read the entire policy and any form(s) and endorsements carefully to determine rights, duties, and what is and is not covered.

Words and phrases that appear in quotation marks have special meaning.  Refer to the Definitions Section.

**COVERAGE**

1.  **Covered Property**

    We will pay for "loss" to:

    a.  Your "stock" in trade consisting of objects of art of every nature and description owned by you or in your care, custody and control, or for which you have agreed prior to "loss" to insure.
    b.  Your reference library and other reference material belonging to you which are not for sale nor listed in your inventory.
    c.  Furniture and fixtures of a fine arts nature belonging to you which are not for sale nor listed in your inventory.

2.  **Property Not Covered**

    Covered Property does not include:

    a.  Improvements and betterments of buildings, furniture and fixtures (except as described above), tools, implements, stationery and similar property which is not for sale, or any property used or intended to be used by the Insured in the operation of the Insured's business.
    b.  Property sold under a deferred payment sales agreement, after it has left your custody.  However, we will cover insured property in the custody of carriers for hire when you are responsible for delivery.
    c.  Contraband or property in the course of illegal transportation or trade.

3.  **Coverage Territory**

    We insure Covered Property worldwide except as prohibited by law.

4.  **Covered Causes of Loss**

    We will pay for accidental, direct physical "loss" to Covered Property occurring during the policy period unless the "loss" is excluded.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

**ADDITIONAL COVERAGES**

**1.   Additional Interests**

Owners and/or lenders of Covered Property agreed to be insured under this policy will be considered Loss Payees and/or Additional Insureds as their respective interests may appear.

**2.   Bailee Legal Liability**

This policy covers your liability as "bailee" of all loaned property for which you have been instructed not to insure excluding, however, any property for which you have obtained a signed release of liability from the owner. In the event of any action involving you for "loss" to such Covered Property we will defend, to the monetary extent of your proportionate interest as "bailee" in this policy, all such actions and pay a proportionate share of all legal fees, court costs or judgments commensurate with your interest as "bailee".

You will not voluntarily assume any liability nor incur any expense nor settle any claim, except at your own cost. You will not interfere in any negotiation for settlement or in any legal proceedings, but whenever requested and at our expense you will aid in securing information and evidence and the attendance of witnesses, and will cooperate with us in all matters which we may deem necessary in the defense of any suit or the prosecution of any appeal.

**3.   Waiver of Subrogation for Auction Houses**

We agree to waive our right of subrogation against auction houses to which you have consigned Covered Property for sale while in their care, custody and control if you have waived such right prior to any "loss". However, this waiver does not extend to malicious mischief and/or any negligence on the part of the auction house, employees or any sub-contractor thereof.


**EXTENSIONS OF COVERAGE**

It is understood and agreed that the policy deductible(s) does not apply to the below Extension of Coverage and that the amounts payable are in addition to the Limit of Insurance as stated in the Declarations.

**1.   Cost of Preparing Inventory**

In the event of "loss" to Covered Property, we will pay up to $10,000 per "occurrence" to reimburse your expense to prepare a complete inventory of the damaged and undamaged Covered Property after a "loss".

**2.   Furniture and Fixtures**

We will pay up to a maximum annual aggregate limit of $10,000 per "occurrence" for furniture and fixtures not of a fine arts nature and not for sale including electronic data processing equipment and "data and media".

**EXCLUSIONS**

We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event contributing concurrently or in any sequence to the "loss". These exclusions apply whether or not the "loss" event results in widespread damage or affects a substantial area:

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

**1.  War and Military Action**

 **a.**  War, including undeclared war, civil war;

 **b.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

 **c.**  Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not apply to Covered Property in transit.

**2.  Governmental Action**

Seizure or destruction of property by order of governmental authority to include but not limited to confiscation, nationalization or requisition. However, we will pay for acts of destruction or "loss" ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this policy.

**3.  Nuclear Hazard**

 **a.**  Any weapon employing atomic fission or fusion;

 **b.**  Nuclear reaction or radiation or radioactive contamination however caused; or

 **c.**  Any chemical, biological, bio-chemical or electromagnetic weapon.

However, we will pay for "loss" caused by resulting fire if the fire would be covered under this policy.

**4.**  Wear and tear, gradual deterioration, inherent defect or any quality in the product which causes it to damage or destroy itself.

**5.**  Damage sustained due to or resulting from any repair, restoration, or retouching unless prior approval is obtained from us.

**6.**  Any earth movement, including earthquake, sinkhole collapse, mine subsidence, landslide, or earth sinking, rising or shifting, expansion or contraction, or any other shifting of earth.

**7.**  Unexplained "loss" or shortage disclosed upon taking inventory.

**8.**  Theft from unattended vehicles of the insured unless your vehicles containing the Covered Property is enclosed, locked and alarmed when left unattended. It is further understood that in the event of Covered Property having been stolen from your vehicle the "loss" must be direct result of forcible entry with visible evidence on the exterior of the vehicle(s).

**9.**  Fluctuations in temperature or relative humidity unless caused by fire, lightening, flood or storms.

**10.**  Any fraudulent, dishonest, or criminal act or acts by:

 **a.**  You, anyone else with an interest in the Covered Property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or

 **b.**  Anyone entrusted with the Covered Property. This exclusion does not apply to a carrier for hire.

**11.**  Delay, loss of use, loss of market or any other consequential "loss".

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

**LOSS SETTLEMENT**

In the event of "loss", Covered Property will be settled as follows. The most we will pay for total or partial "loss" per "occurrence" is the maximum Limit of Insurance as shown in the Declarations:

**1.   Total Loss**

For total "loss", the most we will pay are the following amounts:

**a.**   Your Covered Property at cost plus 30% or selling price less 20%, whichever greater at time of "loss".

**b.**   The value of Covered Property consigned to you will be the lowest agreed amount on the consignment agreement plus 10%.

**c.**   The value of Covered Property of others in your care, custody and control, but not on consignment, will be the amount agreed upon between you and the lender prior to loss, as per written agreement. In the absence of a written agreement, the maximum value for the item will be "current market value".

**d.**   Covered Property sold but not delivered, and/or while in transit to consignee's or owner's premises will be valued at the selling price plus expenses, if any, which have accrued from the date of sale.

**e.**   Objects of art jointly owned are valued as stated on the agreement with the co-owner(s), up to the interest of the Named Insured.

**f.**   Reference library, reference material, furniture and fixtures as described including electronic data processing equipment and "data and media", if covered, are valued at "replacement value".

**g.**   Any Covered Property not described above will be valued at "current market value".

In the event of total "loss", you will surrender the property to us.

**2.   Partial Loss**

For partial "loss", we agree to pay you an amount mutually agreed upon based on the following:

We agree to pay you an amount based on the cost and expense of restoration of the item as nearly as possible to its condition immediately before the "loss", including any additional charges associated with such restoration. Loss in value, if any, after restoration, is covered and will be agreed upon between you and us.

**3.   Pair or Set**

In the event of "loss" to an item which is part of a pair or set:

**a.**   A total loss may be paid, at your option, and in so doing the remaining property will be forfeited to us as salvage; or

**b.**   A partial loss may be paid, and the measure of "loss" shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of the item to the pair or set.

**COVERAGE CONDITIONS**

**1.   Packing**

You agree to the best of your ability that the Covered Property will be packed and unpacked by competent packers.

**2.   Protective Safeguards**

You represent and agree to maintain throughout the term of this policy any and all protective safeguards as were represented to be in existence at all locations when this coverage began.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

3.  **Records**

You will keep a detailed and itemized inventory of all Covered Property.

**GENERAL CONDITIONS**

1.  **Abandonment**

There can be no abandonment of any Covered Property to us.

2.  **Arbitration**

In the event you and we disagree on the value of the Covered Property or the amount of "loss" the claim will be resolved by an arbitration process beginning with a written demand by either party for an appraisal of the "loss". Each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the Covered Property and amount of "loss". If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally. If we submit to an appraisal, we will still retain our right to deny the claim.

3.  **Automatic Reinstatement of Limit After Loss**

The Limit of Insurance will not be reduced by the payment of any claim.

4.  **Cancellation**

   a.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   b.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or
   **(2)** 60 days before the effective date of cancellation if we cancel for any other reason. We will mail or deliver our notice of cancellation to the first Named Insured's last known mailing address. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   c.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

5.  **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

6.  **Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud by you relating to this policy. It is also void if you intentionally conceal or misrepresent a material fact concerning this policy, the Covered Property or your interest in the Covered Property.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

**7.   Conformity to State Law**

When any policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

**8.   Declared Value**

Any statement of nominal value or of non-artistic merit for purposes of a bill of lading or shipping declarations will not be used in the adjustment of a claim for "loss" or damage to the Covered Property.

**9.   Deductible**

In consideration of the premium charged, each claim for "loss" will be adjusted separately and from the amount of each adjusted claim any applicable Deductible sum as stated in the Declarations will be subtracted.

**10.   Duties in the Event of Loss**

In the event of "loss" to Covered Property, you must:

**a.**   Notify the police if a law may have been broken;
**b.**   Notify us as soon as you are aware of the "loss". Include a description of the Covered Property involved;
**c.**   As soon as possible, give us a description of how, when and where the "loss" occurred;
**d.**   Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses, for consideration in the settlement of the claim;
**e.**   Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent;
**f.**   Permit us to inspect the Covered Property and records proving "loss";
**g.**   If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed;
**h.**   Send us a signed Sworn Statement in Proof of Loss containing the information we request to settle the claim. You must do this within 90 days after our request. We will supply you with the necessary forms;
**i.**   Promptly send us any legal papers or notices received concerning the "loss"; and
**j.**   Cooperate with us in the investigation or settlement of the claim.

**11.  Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**12.  Inspections and Surveys**

We have the right but are not obligated to make inspections and surveys at any time, give you reports on the conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions are safe or healthful, or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

**13. Insurable Interest and Limit of Liability**

Even if more than one person has an insurable interest in the Covered Property, we will not be liable for any one "loss" to an insured for more than the amount of such insured's interest at the time of "loss", or for more than the applicable Limit of Insurance as stated in the Declarations.

**14. Insurance Under Two or More Coverages Under this Policy**

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

**15. Legal Action Against Us**

No one may bring a legal action against us under this policy unless there has been full compliance with all the terms and conditions of this policy, and the action is brought within 2 years after you first have knowledge of the "loss".

**16. Liberalization Clause**

If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**17. Loss Buy Back**

You will have the right to repurchase from us the Covered Property that is lost or stolen and later recovered, for the amount paid to you for the "loss", plus an amount which represents loss adjustment and recovery expenses. You may repurchase damaged Covered Property belonging to you and for which a total "loss" has been paid, at the then "current market value" of the damaged Covered Property. We agree to notify you of your right to repurchase damaged or recovered Covered Property and you will have 60 days from date of notice to exercise the repurchase right.

**18. Loss Payment**

We will pay or make good any "loss" covered under this policy within 30 days after:

**a.**   We reach agreement with you; or
**b.**   The entry of final judgment; or
**c**.   The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

**19. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

**20. Other Insurance**

If you have other insurance covering the same "loss" as the insurance under this policy, we will pay only the excess over that you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not. This clause, however, does not apply to insurance carried by the owner(s) of property loaned to the Insured.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

**21. Policy Period**

We cover "loss" which occurs during the policy period shown in the Declarations.

**22. Premiums**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums.

**23. Privilege to Adjust with Owner(s)**

In the event of "loss" to Covered Property of others insured hereunder for which a claim is made, the right to adjust such "loss" with the owner(s) of the Covered Property is reserved to us. A receipt for payment from the owner(s) of that Covered Property will satisfy any claim of the Insured. If legal proceedings are taken to enforce a claim against you, we may opt to conduct and control the defense on behalf of and in your name. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this policy.

**24. Recoveries**

Any recovery or salvage on a "loss" will accrue entirely to our benefit.

**25. Several Liability**

The liability of an insurer under this contract is several and not joint with other insurers party to this contract.  An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer, nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this policy.

**26. Transfer of Subrogation Rights**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

**27. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your Covered Property will have your rights and duties but only with respect to that Covered Property.

**DEFINITIONS**

**1.** "Bailee" means the entity to whom Covered Property is entrusted for a special purpose and for a limited period of time.

**2.** "Current Market Value" means the amount at the time of the "loss" that it would cost to replace Covered Property with another item of similar age, quality, origin, appearance and condition within a reasonable length of time in an appropriate and relevant market.

**3.** "Data and Media" means data or information stored on discs, film, tapes, storage devices or similar electronic data processing media and media itself, computer programs and instructions.

**4.** "Loss" means accidental, direct physical loss of or damage to Covered Property.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

5.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results during the policy period in "loss" to or of Covered Property.

6.  "Replacement Value" means the cost at the time of "loss" to replace the item with material of like kind and quality without deduction for depreciation.

7.  "Stock" means merchandise or inventory held in storage and/or for sale and supplies used in their packing or shipping.


In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.


_____
Secretary

_____
President

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

## Earthquake Coverage

**This endorsement changes the policy. Please read it carefully.**

The Earth Movement Exclusion in the policy is deleted in its entirety.

The policy is extended to cover physical "loss" to Covered Property caused by earthquake. We will not be liable for more than the peril-specific limit noted in the Declarations in any one "occurrence".

Each "loss" thus caused will constitute a single claim hereunder. If more than one earthquake-shock will occur within any period of seventy-two (72) hours during the term of this insurance, such earthquake- shocks will be deemed to be a single earthquake.

All claims for "loss" or expense arising out of any one "occurrence" will be adjusted as one claim and from the amount of each adjusted claim an amount equal to the peril-specific deductible amount noted in the Declarations will be subtracted.

In the event of any recovery or salvage on a "loss" which has been or is being paid thereunder, such recovery or salvage will accrue entirely to the benefit of us under this policy until the sum paid by them has been made up.

All other terms and conditions remain unchanged.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1]. Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

---

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

## Additional Insured

**This endorsement changes the policy. Please read it carefully.**

It is understood and agreed that that the following entity is added as an Additional Insured.

"Loss", if any, will be adjusted with the Named Insured and made payable to the Named Insured and Additional Insured stated below, as their interests may appear at the time of "loss".

1847 Dorset West Rd LLC
1847 Dorset West Road
Dorset, VT 05251

All other terms and conditions remain unchanged.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

## Cyber Exclusion (Targeted Cyber Attack Write-Back)

**This endorsement changes the policy. Please read it carefully.**

**1.** We will not pay for any Cyber loss, damage, liability, cost or expense directly or indirectly caused by:

    **a.** the use of or inability to use any computer, computer system, computer software program, or process or any other electronic system;

    **b.** any computer virus or malicious code;

    **c.** any computer related hoax relating to **1.a.** and/or **1.b.** above.

**2.** However, it is understood and agreed that paragraph **1.**, above, shall not apply to an otherwise covered physical loss of the subject matter insured directly caused by theft, robbery, burglary, hold-up or other criminal taking if:

    **a.** computer, computer system, computer software program, malicious code, computer virus or process or any other electronic system is used in the commission of the act(s) of theft, burglary, robbery, hold-up or other criminal taking; and

    **b.** the act in **2.a.** above is solely targeted at or against the Insured, the Insured's property or one of the Named Location(s) herein.

    The burden of proving a covered loss under this limited write-back shall be on the Insured.

**3.** We will not pay for any loss of or damage to any electronic data (for example files or images) wherever it is stored.

All other terms and conditions remain unchanged.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

## Communicable Disease Exclusion

**This endorsement changes the policy. Please read it carefully.**

**1.** This policy does not insure any loss, damage, liability, claim, cost or expense of whatsoever nature caused by, contributed to by, resulting from, arising out of, or in connection with a "Communicable Disease" or the fear or threat (whether actual or perceived) of a "Communicable Disease".

**2.** For the purposes of this endorsement, loss, damage, liability, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test for a "Communicable Disease", or any property insured hereunder that is affected by such "Communicable Disease".

**3.** "Communicable Disease" means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

    **a.** the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

    **b.** the method of transmission, whether direct or indirect, includes, but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms.

**4.** This endorsement applies to all form(s) and endorsement(s) that are part of this policy.

All other terms and conditions remain unchanged.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number: PCFA-000033-01
PP 20 20 (02/20)

ALL COMMERCIAL LINES

# PRIVACY NOTICE FOR COMMERCIAL LINES

**This notice is provided on behalf of Philadelphia Indemnity Insurance Company**

## PURPOSE OF THIS NOTICE

When you apply for or become an insured under, the insurance policies we issue, we gather certain non-public information or "**NPI**" about your business and its employees. We are committed to safeguarding the NPI you entrust to us. The purpose of this notice is, therefore, to let you know how we collect, use, share and protect the NPI you provide to us in those contexts.

That means this notice applies only to your business interactions with us involving your application for a quote or as a policy holder. NPI we may collect from you in connection with other interactions, such as when you or your employees visit one of our general interest, publicly accessible websites, is governed by the separate notices and policies we publish on those relevant sites or otherwise provide to you.

When we refer in this notice to your "NPI", we mean non-public information as that term is generally defined and applied under the New York Department of Financial Services' Cybersecurity Regulation, the Gramm-Leach-Bliley Act and the National Association of Insurance Commissioners' Data Security Model Law which includes non-public information about your business, such as financial information, account numbers, loss history, personal non-public information of your employees including social security number, address or medical information and any proprietary information we obtain about your business or your customers.

Due to a variety of factors, including certain explicit exemptions they contain, this notice and the NPI we collect from you in connection with the above-described business interactions ***is not*** governed by the EU General Data Protection Regulation, its related EU and Swiss Privacy Shield or the California Consumer Privacy Act.

## COLLECTING YOUR NPI

In the course of, or as part of a business interaction, we collect your NPI both directly from you, or from the agents, brokers or other intermediaries acting on your or our behalf, as well as from a variety of additional sources including:

- the applications or other forms you provide to us (these forms may contain your name, address, social security number, marital status, date of birth, gender, length of employment, prior insurance information, home ownership, residency history, vehicle type, vehicle use, or driving history)
- your transactions with us, our other affiliates of the Tokio Marine Group as well as third parties (this information would include, for example, premium payment and claims history)
- consumer or independent reporting agencies (for example your motor vehicle report, property inspection report, accident report or claim report)

## USING YOUR NPI

We use your NPI in a variety of ways such as creating and issuing a quote, underwriting or otherwise processing and servicing your insurance policy, handling claims you may have and offering you additional products and services that we think may be of interest to you as well as for related research and analytics purposes.

PP 20 20 (02/20)

© Copyright 2020 Tokio Marine Management, Inc.

Policy Number: PCFA-000033-01
PP 20 20 (02/20)

## SHARING YOUR NPI
We do not disclose or share any NPI about our customers or former customers outside of the Tokio Marine Group, except as permitted by law. We do not sell or disclose or share your NPI for third party marketing purposes. We do, however, share your NPI with third parties that we use to service your account or process your insurance policy or your claim, or administer related transactions. These third parties may include:

- your agent, broker or producer
- independent claims adjusters, investigators, data processors or attorneys
- persons or organizations that conduct scientific research, including actuarial or underwriting studies
- an insurance support organization or another insurer, to prevent or prosecute fraud or to properly underwrite the risk
- another insurer, if you are involved in an accident with their insured
- State insurance departments or other governmental or law enforcement authorities, if required by law, to protect our legal interests or in cases of suspected fraud or illegal activities
- a court of law

We also are required to disclose your NPI if we receive a subpoena, search warrant or other court order.

## RETAINING YOUR NPI
The NPI we collect is kept in your policy and/or claim files for as long as needed in connection with your business interactions with you and, if longer, as required by law.

## HOW WE PROTECT YOUR NPI
We have adopted and implemented a security and privacy program that includes technical, organizational, administrative, and other measures designed to protect, as required by applicable law and in accordance with industry standards, against reasonably anticipated or actual threats to the security of your NPI. Our security program was created by reference to widely recognized standards such as those published by the International Standards Organization and National Institute of Standards and Technology. It includes, among many other things, procedures for assessing the need for, and as appropriate, either employing encryption and multi-factor authentication or using equivalent compensating controls. As part of our security program, we have specific incident response and management procedures that are activated whenever we become aware that your NPI was likely to have been compromised.

## CHANGES TO THIS NOTICE
We may amend this notice from time to time and will inform you of these changes as required by law.

## QUESTIONS AND CONTACT INFORMATION
If you have any questions about this notice or how we collect, use, share and protect your NPI, please contact the Chief Privacy Officer of TMNA Services, LLC, who acts as the privacy and data security administrator for most of the Tokio Marine Group in North America. The Chief Privacy Officer's contact information is:

Attn: Privacy Office
TMNA Services, LLC
3 Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004
610-227-1300

© Copyright 2020 Tokio Marine Management, Inc.

# NEW YORK AMENDATORY ENDORSEMENT

**This endorsement changes the policy. Please read it carefully.**

A.  Any references to mold or fungus in any exclusions are deleted.

B.  The **Nuclear Hazard** exclusion of the **EXCLUSIONS** section is deleted and replaced by the following:

**Nuclear Hazard**

Hazardous properties of nuclear material and with respect to which:

**a.**  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**b.**  The Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

C.  The **Arbitration** condition of the **GENERAL CONDITIONS** section is deleted and replaced by the following:

**Arbitration**

In the event you and we disagree on the value of the Covered Property or the amount of "loss" the claim will be resolved by an arbitration process beginning with a written demand by either party for an appraisal of the "loss". Each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the Covered Property and amount of "loss". If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will only be binding at your option. Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally. If we submit to an appraisal, we will still retain our right to deny the claim.

D.  The **Cancellation** condition of the **GENERAL CONDITIONS** section is deleted and replaced by the following:

**Cancellation**

**a.**  The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**b.  Cancellation Of Policies In Effect**

**(1)  60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(a)**  30 days before the effective date of cancellation if we cancel for any reason not included in paragraph **b.(1)(b)** below.

**(b)**  15 days before the effective date of cancellation if we cancel for any of the following reasons:

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

    **i.**   Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

    **ii.**  Conviction of a crime arising out of acts increasing the hazard insured against;

    **iii.** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

    **iv.** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

    **v.**  Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

    **vi.** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

    **vii.** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

    **viii.** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

    **(2)  For More Than 60 Days**

        If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in paragraph **b.(1)(b)** above, provided:

        **(a)** We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

        **(b)** If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

  **c.**  We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

  **d.**  Notice of cancellation to the first Named Insured will state the effective date of and reasons for cancellation. The policy period will end on that date.

  **e.**  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.  However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

  **f.**  A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

**g.** If one of the reasons for cancellation in Paragraph **b.(1)(b)** or **b.(2)(b)**exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**E.** The **Concealment, Misrepresentation, or Fraud** condition of the **GENERAL CONDITIONS** section is deleted and replaced by the following:

**Concealment, Misrepresentation, or Fraud**

We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any "loss" for which coverage is sought under this policy.

**F.** The following is added to **GENERAL CONDITIONS** section and supersedes anything to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will send notice as provided in paragraph **3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;
**c.** A reduction of coverage;
**d.** An increased deductible;
**e.** An addition of exclusion; or
**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit; we will send notice as provided in paragraph **3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in paragraphs **1.** and **2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or
**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.
**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.
**d.** If we violate any of the provisions of paragraph **3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**

Policy Number:  PCFA-000033-01

      **(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

      **(1)** Upon expiration of the 60-day period, unless paragraph **e.(2)** below applies; or

      **(2)** Notwithstanding the provisions in paragraphs **d.(1)** and **d.(2),** as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**Includes copyrighted material of Insurance Services Offices, Inc., with its permission.**