**From:** : John <john@artxlaw.com>
**Sent:** Thursday, May 16, 2024 5:01 PM
**To**; Wendy Lindstrom <wendy@mazzolalindstrom.com> Hanoch Sheps <hanoch@mazzolalindstrom.com>; Katie O'Leary <katie@mazzolalindstrom.com>
**Subject:** Firestone Gallery Claim #PHAR-23-004563 O/R 23-05725LQ

Dear All,

Please see the attached courtesy copy of the Notice of Removal.

This also confirms that, as we told Hanoch in a call earlier today, that we are authorized to accept service of papers by email.

We will also briefly address below your email below and remind you of the Insurer's outstanding, unsatisfied requests, all of which are either permitted or required by the Policy.

*First,* we do not have anything to add to what we have said in email and on the telephone as to why the Conservation Center is the best place for the artworks to be sent for cleaning, conservation, appraisal, etc. It is also certainly the best for both the gallery and the consignors to whom it owes fiduciary duties. While there are conservators in New York (and our firm and our client very likely know and have worked with at least as many as your client and your team such that referrals are not required), none has sufficient resources to carefully transport the artworks to a single location where they can be professional and expeditiously treated as required by a large team, then made available to one or more appraisers for valuations as required. There is nothing whatsoever "vindictive" in sending a large group of artworks to a highly regarded conservation team that can do what needs to be done better and faster than moving small groups of works to multiple conservators in New York, which will only increase the time needed and, by your logic, also the risk of loss and damage since there will many more transits will be required. We do not believe that your arguments to the contrary have any support in law or basis in fact. The allegation that having 200+ artworks treated at an exceptionally skilled and large conservator in Chicago as opposed to multiple smaller conservators in New York borders on bad faith is more than frivolous.

*Second,* we address the other responses in your grouped in **bold** categories below.

**Inventory.** The Insurer's adjuster is travelling for family reasons so that I have not been able to verify that we have received everything that you provided to him and the Insurer. What we have not seen is either (1) the entire detailed and itemized Inventory of all Covered Property that is required by, and a coverage condition (one of three), of the Policy or (2) a subset of that Inventory that includes at all of the damaged and undamaged Covered Property that is the subject of your claim. The spreadsheets that

we have seen appear to have been created post-loss and do not have the information needed to process the claim under the terms of the Policy, but rather appear to have been sent in the hopes of a settlement that you have, for now, dashed by filing a lawsuit. We are attempting now to engage an Artlogic consultant who may be able to help the Insurer gather and process the information it needs. In the meantime, however, please send the Inventory—or at least the subset that includes the Covered Works that are claimed as damaged—post-haste. We confirmed with Hanoch by telephone earlier today that, although it is not required by the Policy, the Insurer will agree to reasonable terms to protect the Insured's and the consignor's confidential information. We would expect the Inventory to have the consignors' contact details but, if it does not, please provide the contact information for those whose Covered Property is the subject of the claims advanced by the Insured.

**Documentation.** While you are correct that the "documentation and inventory" provided up to now was sufficient for the Insurer to make a settlement offer to the Insured, the Insured has rejected the settlement offer without a counteroffer and filed a lawsuit.  Having opted not to settle or to follow the claims protocol in the Policy, but to sue, it cannot rely on documents exchanged for settlement purposes. For that reason, and because the Policy is an enforceable contract, the Insured must meet its obligations under the Policy, including cooperating with the Insurer's investigation of the Claim and allowing the Insurer to examine and audit the Insurer's books and records. What has been provided piecemeal so far is insufficient for the Insurer to process the claims made for Covered Property belonging to the Insured and to others. For reasons that we cannot understand—and require a written explanation of—many of the documents provided were incomplete. For example, many consignment agreements (like the one, perhaps expired, example attached) reference a "Schedule of Works" to be provided by the Gallery which are to include a "Minimum Sales Price" at which the Gallery would be able to sell Works, and which also determined the maximum amount payable to the consignor in the event of loss or damage to Works. In a similar vein, the attached document purporting to contain consignment values for multiple works of different artists does not reference the source of those valuations or make apparent when or how it was created. Other initial requests made in our letter to you were also ignored and not addressed you. Rather than reiterate what is required in this email, I have attached a copy with that highlights the requirements that have been ignored.

**Examination Under Oath.**  We appreciate your confirming that the Insured will be made available for an EUO and will be work with you to schedule it once the information requested and required by the Policy has been made available.

All of our Clients' rights remain reserved.

Please let us know tomorrow when you will begin providing the information and documentation required. We will advise you when we have secured a consultant who can help obtain and review information in Artlogic. Thank you.

Very truly yours,

John R. Cahill
john@artxlaw.com
**ARTxLAW** PLLC
Main 212-719-4400
Mobile 917-674-5135
*Mobilis in Mobili*
https://artxlaw.com/
**CONFIDENTIALITY NOTICE:** This email and the attachments are ***legally privileged and confidential.***

**From:** Wendy Lindstrom <wendy@mazzolalindstrom.com>
**Sent:** Wednesday, May 15, 2024 11:26 AM
**To:** John <john@artxlaw.com>; Hanoch Sheps <hanoch@mazzolalindstrom.com>; Katie O'Leary <katie@mazzolalindstrom.com>
**Subject:** Firestone Gallery Claim #PHAR-23-004563 O/R 23-05725LQ

Dear John,

It is disappointing that this claim has come to this. We had hoped that this could have been resolved amicably. (Perhaps it still can.)

Attached is a filed-copy of the declaratory judgment action, please confirm if you will accept service of process on behalf of Tokio Marine. Also attached is a proposed Order to Show Cause for a TRO and preliminary injunction including the return of the Returnable Art (as that term is defined in the Complaint). We intend to file the OSC imminently unless you confirm in writing (by close of business today) that: (1) the Firestone inventory will not be transported outside the New York metro area; and (2) that the Returnable Art will be returned to Firestone's gallery at 4 Great Jones within 7 business days.

A better solution to conservation can be reached that does not involve shipment outside the New York metro area.

As to your prior email below, the gallery does use Artlogic. We also address you May 10 letter and email dated May 13, 2024. Your claims that the Insured "has not (1) provided *sufficient* documentation for the Insurer to process the Claim or (2) made itself available for an Examination Under Oath," are simply untrue. Please find more detailed responses to the items in your letter as follows:

**Inventory.** On numerous occasions, the Insured has provided the Insurer with a detailed and complete inventory of the damaged and undamaged Covered Property. Most recently, such inventory was provided to Colin and Andy via email on March 13, 2024. This included a spreadsheet indicating works which were total losses, works which were partial losses, and furniture which was covered under the policy. An inventory of the undamaged works was circulated on February 22, 2024 (along with inventories of the total loss and partial loss works) following inspection of the storage facility in January 2024 at which the Insured, the conservator and Andy determined the condition of each of the works involved in the loss. Detailed and complete inventories were also provided to the Insurer numerous other times since the loss occurred – the first round being shortly after the loss occurred in February 2023.

**Documentation.** As described above, the Insured has indicated numerous times which of the Covered Property is a total or partial loss and provided Andy with documentation indicating whether the Covered Property was "Owned by Insured" or "Owned and Consigned by Others." As soon as they were requested, the Insured provided voluminous records including invoices, consignment agreements, and payment receipts regarding the Covered Property on December 15, 2023 and December 19, 2023, and at other times. The Insured also provided photographs showing their pre-loss condition. This documentation and inventory was presumed sufficient when the Insured made a settlement offer to the Insured.

**Examination Under Oath.** The Insured has always been ready, willing and able to appear for an examination under oath at the direction of the Insurer. We offered Eric Firestone's EUO at the January 2024 meeting (in person) and Colin mentioned that an EUO would not be necessary.

We look forward to hearing from you with respect to Tokio Marine not moving art to Chicago and returning the "returnable" art in storage. We would prefer not to file the TRO and make this a fire drill down at the courthouse – but we will be forced to do so if we do not get your written assurances.

Kind regards,

Wendy

**Wendy J. Lindstrom**
**Mazzola Lindstrom LLP**
1350 Avenue of the Americas, 2nd Floor, New York, NY 10019
**M +1 516.680.2889 | D +1 646.216.8440**
Wendy@mazzolalindstrom.com   www.mazzolalindstrom.com

**Disclaimer -** The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation to the contents of this information is strictly prohibited and may be unlawful.

**From:** Wendy Lindstrom <wendy@mazzolalindstrom.com>
**Sent:** Tuesday, May 14, 2024 8:33 AM
**To:** John <john@artxlaw.com>; Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>; Hanoch Sheps <hanoch@mazzolalindstrom.com>; Katie O'Leary <katie@mazzolalindstrom.com>
**Cc:** Ron <ron@artxlaw.com>
**Subject:** Re: Firestone Gallery Claim #PHAR-23-004563 O/R 23-05725LQ

John,

The artworks are not authorized to be moved to Chicago. They are important artworks, they are irreplaceable and they are fragile in their current state.  The insurer may not care if a 1600 mile long road trip exposes them to high risk of transit damage, but our client certainly does. The entire inventory does not need to go to one place – it can be conserved by several conservators in New York.

There are plenty of qualified conservators in New York to choose from - Modern Art Conservation, Amann & Estabrook, Gloria Velandia, Art Care Conservation - four to get you started. We do not expect the insurer to cause "multiple, intermittent transit shipments to and from New York conservators." The works should be moved only from their current location directly to their respective New York conservators and after their conservation directly back to our client. Your and the insurer's "multiple, intermittent" threats below sound intentional and vindictive.  Insisting that this art be moved 1600 miles halfway across the country is unreasonable and bordering on bad faith.

Let us know if the insurer would like for us to recommend additional New York conservators – we know of many in New York that have successfully handled similar restorations.

We will address the other items in your letter and email below asap.

Regards,

Wendy


**Wendy J. Lindstrom**
**Mazzola Lindstrom LLP**
1350 Avenue of the Americas, 2nd Floor, New York, NY 10019
**M +1 516.680.2889 | D +1 646.216.8440**
Wendy@mazzolalindstrom.com   www.mazzolalindstrom.com

**Disclaimer -** The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation to the contents of this information is strictly prohibited and may be unlawful.


**From:** John <john@artxlaw.com>
**Date:** Monday, May 13, 2024 at 4:45 PM
**To:** Wendy Lindstrom <wendy@mazzolalindstrom.com>, Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>, Hanoch Sheps <hanoch@mazzolalindstrom.com>, Katie O'Leary <katie@mazzolalindstrom.com>
**Cc:** Ron <ron@artxlaw.com>
**Subject:** RE: Firestone Gallery Claim #PHAR-23-004563 O/R 23-05725LQ

Dear Wendy,

The Insurer has worked well with The Conservation Center and, apart from its excellent reputation, believes that they are best suited—in terms of space, resources, and expertise—

to treat the large number of damaged artworks efficiently and effectively. While there are a number of conservators in New York, none currently appears to have the current capacity to take all the art in one place or to allocate the resources needed for a time-sensitive assessment, treatment, and post-treatment appraisal. Also, while the Insurer may differ with you about what has caused the delay and additional costs, which have been the subject of earlier correspondence, your May 3rd letter does express an interest in moving forward. Determining the loss in value for artworks cannot occur without (1) the works being cleaned and/or treated (as applicable), followed by (2) an appraiser/appraisal team having access to all the works, ideally in one place and easily viewed along with the Gallery-supplied information about the artworks.

The Gallery's quickly getting the Insurer what it needs to see will only help move the process along faster. For that reason, please let us know ASAP if the Gallery has ArtBase or, if not, advise what other detailed and itemized database/inventory of artworks, etc. the Gallery has been using to comply with the Policy and meet its other compliance needs.

The Insurer will engage a skilled fine art shipper that will take get the works to and from Chicago quickly. (While I don't know how fine art shippers do it, I have made the trip from NY to Chicago in a long day of driving.) As professionals, the shippers will take good care to avoid additional damage to the artworks. In any event, as a practical matter, multiple, intermittent transit shipments to and from New York conservators would create a greater risk than two one-way shipments to a single location.

Of course, the works will remain insured during transit. In the unlikely event that one or more works is further damaged, the appraiser who determines the post-treatment loss in value, if any/as applicable, will of course take all damage due to the occurrence into account in appraising the works.

 Kind regards,

 John

John R. Cahill
john@artxlaw.com
**ARTxLAW PLLC**
Main 212-719-4400
Mobile 917-674-5135
*Mobilis in Mobili*
https://artxlaw.com/
**CONFIDENTIALITY NOTICE:** This email and the attachments are ***legally privileged and confidential.***

**From:** Wendy Lindstrom <wendy@mazzolalindstrom.com>
**Sent:** Saturday, May 11, 2024 8:38 AM
**To:** John <john@artxlaw.com>; Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>; Hanoch Sheps <hanoch@mazzolalindstrom.com>; Katie O'Leary <katie@mazzolalindstrom.com>
**Cc:** Ron <ron@artxlaw.com>
**Subject:** Re: Firestone Gallery Claim #PHAR-23-004563 O/R 23-05725LQ

Dear John,

Thank you for your letter. We are in the process of reviewing it and will respond expeditiously.

That said, **my client does not authorize the insurance company to transport any of these artworks outside the City of New York**.  We all know that damage to fine art happens most often during transit.

There is absolutely no reason to move these artworks more than 800 miles away (a 1600 mile journey round trip) subjecting these artworks to unnecessary risk of damage. That is completely unreasonable. There are plenty of qualified conservators in the City of New York.

We appreciate you relaying this information to Tokio Marine and the adjuster immediately. Please have them find a conservator in New York.

Thank you.

Wendy


**Wendy J. Lindstrom**
**Mazzola Lindstrom LLP**
1350 Avenue of the Americas, 2nd Floor, New York, NY 10019
**M +1 516.680.2889 | D +1 646.216.8440**
Wendy@mazzolalindstrom.com   www.mazzolalindstrom.com

**Disclaimer -** The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation to the contents of this information is strictly prohibited and may be unlawful.


**From:** John <john@artxlaw.com>
**Date:** Friday, May 10, 2024 at 1:01 PM
**To:** Wendy Lindstrom <wendy@mazzolalindstrom.com>
**Cc:** Ron <ron@artxlaw.com>
**Subject:** RE: Firestone Gallery Claim #PHAR-23-004563 O/R 23-05725LQ

Dear Wendy,

It was good to see you (and other humans—I don't get out much!) at the Gala.

As I note int the attached letter, I also hoped (and still hope) that this can be settled but I think that all the information and documentation needs to be put together and organized the old-fashioned way before that is possible.

If you or your client would like any help identifying what is needed, etc., or to discuss next week, let me know.

Kind regards,

John


John R. Cahill
john@artxlaw.com
**ARTxLAW** **PLLC**
Main 212-719-4400
Mobile 917-674-5135

*Mobilis in Mobili*
https://artxlaw.com/
**CONFIDENTIALITY NOTICE:** This email and the attachments are ***legally privileged and confidential.***