SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
FIRESTONE ART, LLC d/b/a ERIC FIRESTONE,

                    Plaintiff,                          Index No.: 1:24-cv-03772

      -against-

TOKIO MARINE HIGHLAND INSURANCE
SERVICES, INC. d/b/a Tokio Marine Highland, Fine Art
Division, PHILADELPHIA INDEMNITY
INSURANCE COMPANY a Tokio Marine Company,
and DOES 1-10,

                    Defendants.
-------------------------------------------------------------------X

## Reply Memorandum of Law in Further Support of Request for Injunctive Relief

**MAZZOLA LINDSTROM LLP**
Wendy J. Lindstrom
Hanoch Sheps
Katie O'Leary
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
D: 646.216.8300
M. 516.680.2889
wendy@mazzolalindstrom.com
hanoch@mazzolalindstrom.com
katie@mazzolalindstrom.com

*Attorneys for Plaintiff Firestone Art, LLC*

**Preliminary Statement[1]**

Plaintiff Firestone Art, LLC, by the undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion, brought by order to show cause, for an injunction barring the defendants from, in sum, removing property belonging to plaintiff, or consigned to plaintiff, from storage facilities in the New York metropolitan area to Chicago without plaintiff's authorization – and in fact, with plaintiff's express denial of authorization – as well as requiring defendants to return certain property to plaintiff over which the defendant-insurers have asserted no claim, nor could they, to a superior right of possession.

Both the law and a balance of equities favor granting plaintiff the requested relief, as there can be no doubt that the artworks at issue are unique and irreplaceable. The fact that the artworks are unique and irreplaceable makes the risk of damage in round trip long-distance transit the irreparable harm plaintiff risks suffering. Additionally, testimony at the evidentiary hearing will show that many if not all of the consignors and owners do not want their art transported, are concerned about the risk of damage attendant to long-distance travel, and at least a few want to be intimately involved in the conservation process, which they will not be able to do if their artworks are so far away in Chicago.

---

[1] Plaintiff is aware of Your Honor's Individual Rules of Practice, Rule 5.A. (Conferences), noting the need for principal trial counsel to appear at all conferences. Due to the unexpected timing of the hearing, lead counsel Wendy Lindstrom cannot attend, as she out of state.

**Argument**

**Point I:**   **Interference with the Plaintiff's Right to Possession of Unique Property – Hundreds of Artworks – is an Irreparable Harm.**

New York's Civil Procedure Law and Rules § 7109[2] provides that "[w]here the chattel is

unique, the court may grant a preliminary injunction ...." Federal case law says essentially the same.

*See*, e.g., *John Paul Mitchel Sys. v. Quality King Distribs.*, 106 F.Supp.2d 462 (2000) ("Only where

the chattel is unique may a court grant a preliminary injunction restraining sale or transfer of the

chattel per CPLR 7109(a), finding that, generally, a unique chattel is something irreplaceable." CPLR

7109(a) states:

**§ 7109. Unique Chattel**

(a)  Injunction, temporary restraining order. Where the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that the chattel shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the court.

(b)  Judgment enforceable by contempt. Where the chattel is unique, the court, in addition to granting a judgment under section 7108, may direct that a party in possession deliver the chattel to the party entitled to possession. Disobedience of a judgment or order so directing may be punished as a contempt of court. If a party accepts the value of the chattel awarded to him by the judgment, he shall have no claim to the chattel.

However, "the uniqueness requirement does not force plaintiffs to prove that each chattel is

rare or irreplaceable, but simply that it is not a mass-produced item readily available on the market,

such that a money judgment enabling purchase of a replacement would be an adequate remedy."

*Christie's Inc. v. Davis,* 247 F. Supp.2d 414, 424 (SDNY 2002). The *Christie's* case involved a loan

collateralized by unique historical artifacts kept in the defendants' Connecticut home. They defaulted

on their debt. The Southern District of New York, citing NY CPLR § 7109, ordered the turnover to

---

[2] It is undisputed that the Firestone Policy is to be interpreted by and enforced under New York substantive law inasmuch as the insured is domiciled in New York, the policy was delivered in New York, the loss happened and New York and the majority of the claim adjustment was in New York, not to mention the claims handler and adjuster also operate out of New York.

the plaintiff of the collateral, even though it was located in Connecticut. Thus, we see that even though the artworks at issue here are located across the river in New Jersey, this court has the jurisdiction to enjoin the transfer of the artworks from the New York metropolitan area.

Injunctions have been issued in other cases involving unique chattels such as artworks. In *Danae Art Int'l v. Stallone,* 163 A.D.2d 81, 557 N.Y.S.2d 338 (1st Dept 1990), the court reversed the lower court's denial of a preliminary injunction, finding that the painting at issue was unique. The court also granted the preliminary injunction based on that fact that plaintiffs relied on the authority or apparent authority of the defendants to sell the painting and deemed it "appropriate to maintain the status quo pending a resolution of the issues presented" to prevent irreparable harm from occurring if the injunction were not granted. 557 N.Y.S.2d at 339. Here, the defendants-insurers have <u>no authority</u>, and have cited no legal precedent in support of their claimed right to transport the artworks to Chicago. As shown below, it is Firestone that is vested with the primary right of possession and to conserve the damaged artworks. The defendants-insurers are only vested with the obligation to pay Firestone for the conservation of the damaged artworks.

For a preliminary injunction to issue under CPLR § 7109, a test in equity will have to be met as well – plaintiff easily passes this test. According to *Kozar v. Christie's, Inc.* 31 Misc. 2d 1228(a), 929 N.Y.S.2d 200 (Sup. Ct., Westchester Cty 2011), CPLR § 7109 authorizes a court to grant a preliminary injunction where the chattel is unique…[but] plaintiffs must still meet the requirements for a preliminary injunction' (quoting *Danae Art,* supra, 163 A.D.2d at 82). In *Kozar,* the court found that the plaintiffs satisfied the requirement that the chattel at issue – a painting – is unique and irreplaceable. "To show that an item is unique, plaintiff must show 'that it is not a mass-produced item readily available on the market, such that a money judgment enabling purchase of a replacement would be an adequate remedy,'" quoting *Christie's Inc.* 247 F. Supp.2d at 424. "Items that have been

3

found to be unique are heirlooms, **works of art**, patents and inventions, and particular shares of stock with peculiar investment features. (emphasis added). See also, *Staff v. Hemingway*, 47 A.D.2d 709, 365 N.Y.S.2d 84 (4th Dept 1975); *Morse v. Penzimer*, 58 Misc. 2d 156, 159, 295 N.Y.S.2d 125 (Sup. Ct., Oneida Cty., 1968) (finding that CPLR § 7109 provides for injunctive relief where the chattel is unique.)

In *Racanelli Constr. Group v. Easle Serv. Corp.*, 2014 NY Slip Op 33437(U), 2014 N.Y. Misc. LEXIS 5801 (Sup. Ct. Queens Co. 2014), the court found injunctive relief to be warranted due to potential irreparable harm, because the chattels at issue were unique machines, and interference with the right of possession constituted an immediate injury which could not be adequately compensated by monetary damages. *See also, generally, Jiggets v. Perales*, 202 A.D.2d 341, 609 N.Y.S.2d 222 (1st Dept 1994)*; Housing Works v. City of New York*, 255 A.D.2d 209, 680 N.Y.S.2d 487 (1st Dept 1998).

In *Di Marzo v. Fast Trak Structures*, 298 A.D.2d 909, 747 N.Y.S.2d 637 (4th Dep't 2002), the court found that the equities weighed in favor of an injunction where the plaintiff demonstrated the existence of the extraordinary circumstances that would tip the balance in his favor. See, generally, *Penfield v. New York*, 115 A.D. 502, 101 N.Y.S. 442 (1st Dept 1906). Here, there are manifestly extraordinary circumstances, as the defendants seek – without any contractual right to do so – to transport Firestone's and its consignors' artworks hundreds of miles away for conservation, even though it is Firestone that has the right to have the artworks conserved by conservators of Firestone's choosing, and even though it would be a monumentally outrageous inconvenience for Firestone, its artists, estates and clients to have to travel to Chicago to oversee the conservation.

**Point II:        Insurance Law on Certain Repair is Instructive for Conservation.**

It is a common principle in insurance law that insurance companies may not *require* insureds to use a particular repair service to repair covered property. As will be seen, this is codified, if you

4

will, by the Firestone Policy (DKT 11-2), and this rule is stated in other contexts. Cases involving the repair of automobiles, and homeowners' policies, are illustrative.

In the context of motor vehicle insurance, courts have consistently held that "it is axiomatic that the insurance company cannot compel the insured to use a particular repair shop." *Nedelka v. Allstate Ins.,* 2003 NYLJ LEXIS 2688 (Dist. Ct., Nassau Cty., 2003). In *Nedelka*, the court noted that the legislative intent of Insurance Law § 2610 (b) – though applied to automotive insurance, specifically – was to protect the consumer's right to choose and combat the practice of coercing or enticing consumers into using repair shops selected by insurers rather than the ones they preferred to use. *Id.; see also, Allstate Ins. v. Serio,* 98 N.Y.2d 198, 746 N.Y.S.2d 416 (2002) (finding that the language of section 2610 (b) restricts when an insurance company can make recommendations or suggestions that repairs be performed at a particular shop).

The *Nedelka* court also noted that while the insured may not have "carte blanche authority to find a repair shop to perform necessary services," the insured does have the "right to seek the reasonable cost to have a repair shop of their choosing repair the vehicle." Similar to the insurance companies in *Nedelka* and *Serio*, defendant Tokio Marine is attempting to force plaintiff to accede to the shipment of hundreds of artworks more than 800 miles away for conservation, despite holding neither the legal authority over the property nor right under the policy to do so.

In *Norman v. Liberty Mut. Fire Ins. Co.,* 471 F. Supp.3d 1225 (Dist. of Ala. 2020), which involved a homeowner's policy, the court distinguished the insurer's duty to *pay* for repairs from the insurer's duty to repair, finding that the insurance policy did not require the insurer itself to repair or replace the covered property, or "to assure that its payment resulted in an adequate repair or replacement." *Id* at 1233. Rather, the policy, like the Firestone Policy, "obligated [the insurer] to *pay* to repair or replace" the covered property (emphasis added). *Id.* In other words, the insurer's

obligations were met by making payment to the insured for the repair; it had no other duty (or right) to ensure that the repair was made adequately – and, so it follows, it had no right to force the insured to choose a particular repair service. Its only job was to cover the cost of the repair.

Conversely, in *People's Trust Ins. v. Amaro*, 319 So.3d 747, 751 (Fla. Ct of App. 2021), which also involved a homeowner's policy, the court found that the insured breached the policy when it hired its own contractor to perform repairs, because the policy specifically included a Preferred Contractor Endorsement provision that provided the insured with a lower premium in exchange for the insurer having the right to repair covered property using its preferred contractor in lieu of issuing a cash payment.

We now turn to the Firestone Policy, which provides that the insured – *i.e.*, Firestone – has the right to conserve damaged artworks, and contains no provision for the insurer to choose the conservator. Additionally, like the policy in *Norman,* the Firestone Policy in no way gives the insurer the unilateral right, much less the absolute authority, to require the insured to conserve and restore the covered property using a particular conservator; its only obligation is to *pay* Firestone for such repair service. The Firestone Policy's Partial Loss provision states (Dkt 11-2, p. 8):

### 2. Partial Loss

For partial "loss", we agree to pay you an amount mutually agreed upon based on the following: ***We agree to pay you*** an amount based on the cost and expense of restoration of the item as nearly as possible to its condition immediately before the "loss", including any additional charges associated with such restoration. Loss in value, if any, after restoration, is covered and will be agreed upon between you and us. (emphasis added).

The phrase "we agree to pay you" means that the defendants-insurers will pay the plaintiff-insured for the cost of restoration. There is no Preferred Contractor Endorsement as in *Amaro*, nor are the defendants-insurers vested with the right to control that process, certainly not over the objection of the plaintiff-insured. While it may well be common in the industry for an insurer to

facilitate and liaise directly with conservators and transporters to expedite conservation and adjustment, where, as here, the plaintiff-insured has explicitly objected to that proposed course of action, the insured's superior possessory right and its clear contractual right to choose its own conservators wins the argument. Plaintiff has unequivocally objected to the defendants-insurers' expressed intent to transport property outside of the New York metropolitan area. Nothing in the Firestone Policy gives the insurer the right to choose a conservator over the insured's objection. Since the policy gives the insured the right to choose the conservator, and imposes the obligation upon the insured "to pay" for such conservation, the defendants must be enjoined from transporting the artworks outside of the New York metropolitan area.

Additionally, paragraph 23 of the policy distinguishes between gallery inventory, consigned works and "Covered Property of others." (Dkt. 11-2, p. 11).

**GENERAL CONDITIONS**
\*\*\*
**23. Privilege to Adjust with Owner(s)**
In the event of "loss" to Covered Property of others insured hereunder for which a claim is made, the right to adjust such "loss" with the owner(s) of the Covered Property is reserved to us. A receipt for payment from the owner(s) of **that** Covered Property will satisfy any claim of the Insured. If legal proceedings are taken to enforce a claim against you, we may opt to conduct and control the defense on behalf of and in your name. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this policy.

The word "that" in paragraph 23 is restrictive, limiting the right of the insurer to adjust claims with owners directly, applying only to such property for which there is a receipt for payment from the purchaser (*i.e.*, owner) to Firestone. That is, the insurer can only negotiate directly with owners of artworks who paid for them, and thus who are vested with title, and thus have become their owners. This is why the clause says that "a receipt for payment from the owner(s) of that Covered Property is reserved to us." Artworks that are consigned by artists, their estates, or their

7

foundations for sale by Firestone do not fall within this clause, and thus the insurer cannot negotiate with them directly, because consignors are not "owners" *who have paid Firestone* for the artworks.

Further emphasizing the distinction between artworks that have been sold, and thus as to which the insurer can negotiate directly, and artworks that have been consigned to Firestone for sale, we refer the court to the Loss Settlement provisions 1.b, 1.c, and 1.d. (Dkt. 11-2, p.8). Where there is a total loss, there is a clear distinction between loss of property purchased from the gallery, but still held by it, and consigned works:

### LOSS SETTLEMENT

In the event of "loss", Covered Property will be settled as follows. The most we will pay for total or partial "loss" per "occurrence" is the maximum Limit of Insurance as shown in the Declarations:

**1. Total Loss**

For total "loss", the most we will pay are the following amounts:

**a.** Your Covered Property at cost plus 30% or selling price less 20%, whichever greater at time of "loss".

**b.** The value of Covered Property consigned to you will be the lowest agreed amount on the consignment agreement plus 10%.

**c.** The value of Covered Property of others in your care, custody and control, ***but not on consignment***, will be the amount agreed upon between you and the lender prior to loss, as per written agreement. In the absence of a written agreement, the maximum value for the item will be "current market value".

**d.** Covered Property ***sold but not delivered***, and/or while in transit to consignee's or owner's premises ***will be valued at the selling price plus expenses***, if any, which have accrued from the date of sale.

\*\*\*

Thus we see that if consigned artworks are a total loss, then the insurer must pay the greater of the cost of the artworks plus 30%, or the selling price minus 20%, but if there is a total loss of artworks that have been purchased but still within Firestone's custody, then the insurer must pay the purchase price plus expenses. The point is, The Firestone Policy treats consigned artworks entirely differently from purchased artworks owned by others, and clearly Firestone retains the right under

8

the policy to repair damaged artworks that it owns or that have been consigned to it with a conservator of Firestone's choosing, and the insurer retains the obligation to pay Firestone for such repairs.

## Conclusion

Based on the foregoing, and upon the testimony that will be presented at the evidentiary hearing on May 24, 2024, plaintiff Firestone Art, LLC respectfully requests that the court enjoin the defendants from transporting the artworks involved in this claim outside the New York City metropolitan area, and order that the defendants deliver the Returnable Artwork to plaintiff within 7 days of the issuance of the court's order.

Dated:  May 22, 2024
        New York, New York

Respectfully submitted,
MAZZOLA LINDSTROM LLP

By:     *Wendy J. Lindstrom*
        Wendy J. Lindstrom
        Hanoch Sheps
        Katie O'Leary
        *Attorneys for plaintiff*
        1350 Avenue of the Americas, 2nd Floor
        New York, New York 10019
        D: 646.216.8300
        M: 516.680.2889
        wendy@mazzolalindstrom.com
        hanoch@mazzolalindstrom.com
        katie@mazzolalindstrom.com