# MAZZOLA LINDSTROM LLP

Wendy Lindstrom
wendy@mazzolalindstrom.com
(646) 216-8440

Hanoch Sheps
hanoch@mazzolalindstrom.com
(646) 216-8126

May 29, 2024

*Via* ECF and email

Honorable John P. Cronan, USDJ-SDNY
CronanNYSDChambers@nysd.uscourts.gov
United States District Court
for the Southern District of New York
New York, NY 10007

As indicated in the Court's May 25, 2024 Order, Defendants shall respond to Plaintiff's letter by June 3, 2024.  The Court will temporarily place Docket Number 16 under seal until Defendants have submitted their response. The Clerk of Court is respectfully directed to seal Docket Number 16 and restrict viewing access to the parties and court users.

SO ORDERED.
Date: May 30, 2024
New York, New York

*[signature]*

JOHN P. CRONAN
United States District Judge

**Re:** *Firestone Art LLC v. Philadelphia Indem. Ins. Co., et al.* **24-cv-03772 (JPC)**
**Request to Remove Document ECF-16 from the Public Docket, and to Direct that Defendant File a Redacted Version in its Stead**

Dear Judge Cronan:

On behalf of plaintiff Firestone Art LLC, we hereby request that the court direct that ECF-16 be removed from the public docket, and that the defendants file, in its place, a redacted version. We raised this issue at the preliminary-injunction hearing that was held on Friday, May 24th, as expeditiously as possible, as the document had been put up on the public docket one day earlier, on May 23rd, by defense counsel.

ECF-16 contains Firestone's internal pricing for artworks. These prices represent proprietary and confidential data drawn from consignment agreements and inventory values, and thus if purchasers of art come to learn these prices, Firestone will be placed at a competitive disadvantage. If potential purchasers or competitors learn the bottom number from the court docket, there will be downward pressure on the sales price. Opposing counsel stated that New York law requires notice of certain prices, but there is no legal requirement that a gallery identify prices agreed to with its consignors or its inventory value.

The price list had been provided by Firestone to its insurer, in compliance with its duty of cooperation, that Firestone and its insurer would use for the purpose of evaluating the quantum of damages caused by the water infiltration that has given rise to the coverage claim in this lawsuit.

Specifically, undersigned counsel relayed two pdfs (52 pages altogether) in or around November 2023 to defendants' independent adjuster to delineate artworks which, as of then, were considered by plaintiff to be either partial or total losses – they were for reference purposes to make searching for them at the storage facility and amongst other records disclosed by plaintiff easier for defendants' adjuster. Those lists include proprietary prices to establish the

scope of loss and were not intended nor understood to be for wider distribution, but for adjustment purposes only.[1]

Defense counsel refers to the substance of the pdfs in its cover email attaching the Notice of Removal on May 16, 2024, describing it as follows: "… the attached document purporting to contain consignment values for multiple works of different artists does not reference the source of those valuations or make apparent when or how it was created."[2]

With the proper due diligence, it would have been easy to confirm with the adjuster or claims director both how these numbers were derived and from where – the pdf attached by opposing counsel is missing 45 pages, is out of its original order, and has apparently been edited to remove the first page of each of the two original pdfs which clearly identified that they are part of separate dated "partial loss" and "total loss" lists. Moreover, the attachment is only referenced tangentially as an example of what, in defendants' view, was missing from plaintiff's documentation substantiating its claim. (See Def. Decl., ECF 11 at ¶8). It is in no way relevant to the preliminary injunction issues.

The plaintiff is mindful of the principle that, where documents submitted to the court are germane to the court's decision-making process, such documents may not properly be sealed. See *Lugosch III v. Pyramid Co. of Onondaga*, 435 F. 3d 110 (2d Cir. 2006). That is, sealing documents filed with a court implicates both common-law and a qualified First Amendment rights of access to such documents. 435 F.3d 110, 119-20 (2d Cir. 2006); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). Thus, the initial question is whether the document at issue is a "judicial document." 435 F.3d at 119. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). "In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (internal quote and citation omitted).

Here, the first step of the analysis is satisfied: In determining whether an injunction was or was not warranted, the court did not consider the prices set forth in ECF-16. There was not one mention of pricing during the hearing, and the court's determination that a preliminary injunction was not warranted because Firestone failed to demonstrate that irreparable harm would ensue if an injunction were not granted was in no way dependent on the price of the artworks.

Nonetheless, we acknowledge the distinction between unsealing a document that has been sealed versus requesting that a document that has been made public be sealed. Firestone

---

[1] Litigants customarily keep the artists' names, artwork titles and prices out of the case in order to avoid reputational damage to the artworks; even if they are perfectly conserved, they may still sell for markedly less merely because they had been conserved, much like a Ferrari that has been dinged might have a markedly reduced value even if the ding is perfectly repaired.

[2] Counsel names the attachment as "24.1.22 Firestone Gallery Consignment Values Partial Claim Total Loss," seemingly dates two business days following a significant private settlement meeting attended by undersigned counsel, plaintiff's principal, partner and senior staff, defendants' claim director, independent adjuster and conservator. (ECF 1, Complaint, ¶¶ 40 – 43).

MAZZOLA LINDSTROM LLP

would agree that if the document was necessary to the deliberative process, then, its being, *ipso facto*, a judicial document would require the denial of the motion to seal it subject to redaction. In *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), the court, when faced with a motion to seal a document that had been inadvertently made public, stated "[t]he genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back." Nonetheless, where appropriate, courts do remove items from the public docket. See, *e.g.*, *Baldwin v. Lyondell Chem. Co.*, 2014 U.S. Dist. LEXIS 32899, at fn.4 (SDNY 2014) (Ronnie Abrams, USDJ-SDNY) (removing settlement agreement from public docket); *P&L Dev., LLC v. Gerber Prods. Co.*, 2022 U.S. Dist. LEXIS 4628, 2022 WL 94380 (Anne Y. Shields, USMJ-EDNY) (ordering redaction from public docket of pricing information); *Dorce v. City of New York,* 2024 U.S. Dist. LEXIS 7017, 2024 WL 139546 (Sarah L. Cave, USMJ-SDNY) (ordering clerk to seal previously publicly available docket entry containing privileged materials); *BSN Med., Inc. v. Parker Med. Assocs., LLC*, 2011 U.S. Dist. LEXIS 4833, 2011 WL 197217 (John F. Keenan, USDJ-SDNY) (ordering removal from public docket document that had been inadvertently filed); *United States v. Vilar*, 2021 U.S. Dist. LEXIS 21431 (Richard J. Sullivan, USDJ-SDNY) (ordering the removal from the public docket documents containing financial information and personal information).

  Here, it is appropriate to remove the pricing information from the public docket because it had no bearing on the preliminary injunction opposition or the court's order, and defense counsel cannot articulate any reason why it ought to stay on the docket in unredacted form.

  Accordingly, it is respectfully requested that the court direct that ECF-16 be removed from the public docket, and that the defendants file, in its place, a redacted version. We thank the court for its consideration of this request. At the very least, the document should be taken down until defense counsel can demonstrate a reason for it to be made public.

               Respectfully submitted,

               Mazzola Lindstrom LLP

               Hanoch Sheps

MAZZOLA LINDSTROM LLP